UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:
ROBIN GRAHAM ANDREWS

CASE NO.:
08-00151-8-JRL

__DEBTOR(S)__

CHAPTER 13

BRIEF IN SUPPORT OF DEBTOR'S OBJECTIONS TO CLAIMS
OF
B-REAL, LLC (CLAIM NO. 5) AND ROUNDUP FUNDING, LLC (CLAIM NO. 7)

STATEMENT OF THE CASE

With such imaginative and innocuous names, it is easy to underestimate the negative

impact large-scale consumer debt buyers like B-Real, LLC and Roundup Funding, LLC are

having on the bankruptcy court system. The sheer volume of claims filed by these entities is

astounding. In the Eastern District of North Carolina alone, B-Real had filed 614 claims and

Roundup had filed 1,074 claims in 2008 as of the date of hearing of these matters, according to

the debtor's PACER search.[1] The debtor requests, pursuant to FRE 201, that the Court take

judicial notice of the number of claims filed by B-Real and Roundup as proof that these entities

regularly file claims in the District. The problem is that a significant portion of these claims are

filed on purported debts which, on the face of the claims themselves, are time barred or otherwise

filed without any documentation or information sufficient for the debtor to ascertain the

claimant's connection to the original creditor or to an assignee of the original creditor. B-Real

and Roundup are not entities the debtor has ever heard of or dealt with prior to the filing of her

---

1 These numbers were determined through a PACER search of claims filed by B-Real and Roundup in the Eastern
District of North Carolina conducted by debtor's counsel on July 23, 2008 in advance of the hearing on July 24,
2008.

bankruptcy case. In fact, the filing of the bankruptcy case is often the triggering event by which a defaulted debt is sold, through a "forward flow agreement," to the buyer who then files the claim in order to seek payment in the bankruptcy case.

Debtor Robin Andrews' case illustrates the prevalence with which such stale and deficient claims are filed by debt buyers in our District. Of the twelve total claims filed in her case, five were filed by debt buyers (Jefferson Capital-3; B-Real-1; and Roundup-1). Of those five, the debtor filed objections on identical grounds to four of those claims. Debtor settled her objections to two claims filed by Jefferson Capital.[2] Thus, 80% of the claims filed by debt buyers in Ms. Andrews' case were time barred on their face and otherwise failed to show proof that the claimant was entitled to collect a debt from the debtor. Ms. Andrews' case exemplifies the high rate at which stale and deficient claims are filed by debt buyers and the substantial number of such claims threatens the efficiency and integrity of the claims administration process.

The debtor recognizes that the bankruptcy rules provide less scrutiny of claims in order to promote efficient and economical administration. However, the proliferation of debt buyer claims undermines these very policy goals. For example, the authorized agent signing the claims of B-Real and Roundup in Ms. Andrews' case, Steven G. Kane, appears to be listed as the signatory for all of the above-referenced 1,688 claims filed by B-Real and Roundup in the District so far this year from a review of the index of claims produced by debtor's PACER search. The debtor believes that Mr. Kane signs proofs of claim filed in other districts as well. Mr. Kane must be a very busy man. In another case in this Court, the Chapter 7 trustee objected

---

2 Debtor resolved her objections to the claims of Jefferson Capital Systems, LLC (Claim Nos. 4 and 12) pursuant to the Consent Orders entered on June 23, 2008. Ms. Andrews did not object to the other claim filed by Jefferson Capital (Claim No. 9) for the reason that the original creditor and debt disclosed on the proof of claim were known to her.

to three claims of Roundup on the grounds that "the documentation supplied by Roundup did not show that the claims against the female debtor were, in fact, assigned to Roundup." *In re Coates* (03-04673-8-JRL) (June 9, 2008). The Court allowed Roundup to submit evidence to supplement its claims. Roundup provided an affidavit from Mr. Kane in which Mr. Kane stated that B-Line, LLC had purchased 61,017 Chapter 7 bankruptcy receivables from Bank One, Delaware NA and 77,408 Chapter 7 bankruptcy receivables from Chase Manhattan Bank, USA, N.A., and that Ms. Coates' three accounts were among those thousands of receivables. Mr. Kane's affidavit attested that he was custodian of records and operation manager for B-Line, LLC and that B-Line had sold these 138,425 accounts to Roundup, B-Line's wholly-owned subsidiary. The Court found that Mr. Kane's statements constituted sufficient proof of the sales of Ms. Coates' accounts to Roundup. Of more importance to this case, Mr. Kane's affidavit provides a glimpse into the enormous volume of bankruptcy receivables bought by debt buyers such as Roundup and B-Real and the number of claims signed personally by Mr. Kane in this District, let alone nationwide. Such practices reasonably call into question whether minimal or adequate review of claims is being undertaken by these debt buyers prior to filing.

## PROCEDURAL HISTORY

Debtor Robin Andrews filed her individual case on January 9, 2008 and her Chapter 13 plan, which pays no dividend to unsecured creditors, was confirmed on April 15, 2008. The proofs of claim filed by B-Real (Claim No. 5) and Roundup (Claim No. 7) were both signed on the same day, January 31, 2008. The proofs of claim consist entirely of the official claim form with the identical attachment page entitled "Account Information." Both claims are signed by Steven G. Kane, as authorized agent for B-Real, LLC and Roundup Funding, LLC. Listed below

3

Mr. Kane's signature line is "EMAIL: BLINE.CHAPTER13@BLINELLC.COM". Both claims
are for "money owed" and show charge off dates of more than three years before the filing date
of the debtor's bankruptcy case.[3] A considerable period of time can lapse between default and
charge off, thus, a charge off date can be a misleading time reference. Nonetheless, the claims
show charge off dates of more than eight years (B-Real) and four years (Roundup) before the
filing of Ms. Andrews's bankruptcy case.

The debtor filed her Objection to B-Real's claim (number 5) on May 16, 2008 and B-Real
filed a Response In Opposition to Debtor's Objection on June 16, 2008 and an Amended
Response on June 17, 2008. The debtor filed her Objection to Roundup's claim (number 7) on
May 26, 2008. Roundup filed its Response on June 25, 2008. These matters were heard before
Judge Thomas A. Small on July 24, 2008. The creditors do not dispute the debtor's assertion
that both claims are time barred under the applicable statutes of limitation. The applicable statute
of limitations for such a debt is three years from the date of default pursuant to N.C.G.S. § 1-
52(1).

## ARGUMENT

Outside the bankruptcy claims process, most courts have found it is a violation of the Fair
Debt Collection Practices Act (FDCPA) for a creditor to sue on a time barred debt without
having first determined after reasonable inquiry that the limitations period had been or should
have been tolled. *See Kimber v. Federal Financial Corp*, 668 F.Supp. 1480 (M.D.Ala.1987).
The debtor acknowledges that some courts have distinguished the filing of a proof of claim from
other collection action and have held that a debtor cannot maintain a FDCPA violation in

---

3 B-Real's claim is for $3,287.92 and lists a charge off date of 06/28/1999. Roundup's claim is for $1,405.11 and
lists a charge off date of 04/30/2003.

response to a creditor's filing of a proof of claim. *See Adair v. Sherman,* 230 F.3d 890, 895-96 (7th Cir. 2000), *Kaiser v. Braje & Nelson, LLP,* 2006 WL 1285143 at *6,7 (Bankr. N.D.Ind. 2006), *In re Cooper* 253 B.R. 286, 291 (Bankr. N.D.Fla. 2000). When debtors have sought sanctions through a claims objection as opposed to raising an FDCPA claim in an adversary proceeding, some courts have held that that a creditor cannot be sanctioned under 11 U.S.C. § 105 for filing a time barred claim. *See infra In re Varona,* 388 B.R. 705, 2008 WL 2150109 (May 22, 2008). Such decisions provide the "loopholes" through which debt buyers are permitted to file an inordinate number of claims falling far short of the requirements of Rule 3001 without the threat of any penalty other than disallowance of the claim on an objection by objection basis.

B-Real and Roundup contend that Ms. Andrews lacks standing to object to these claims because her confirmed Chapter 13 plan provides for a zero percent distribution to unsecured claimants. It is important to note, however, that B-Real and Roundup are not claiming that their claims have been properly documented nor are they contesting Ms. Andrews' assertion that the debts are time barred. Rather, they contend that a debtor is not damaged or harmed by these deficient claims when the debtor has a 0% plan. Such a "no harm, no foul" defense is a misnomer as the debtor is damaged by these claims even if it turns out, after the claims are filed, that unsecured claimants will not receive payment through the plan.

A debtor must object to these claims that she has not scheduled (B-Real's claim no. 5) or that she has scheduled as disputed (Roundup's claim number 7), especially when the claims are time barred, whether or not unsecured claimants are to receive a dividend through the plan. The completion rate for Chapter 13 cases is far less than 100% and under BAPCPA, if the debtor's case is dismissed, she may not be able to re-file for relief under Title 11 for a substantial period

5

of time. If the debtor does not raise by objection the affirmative defense of the statute of limitations, that defense may be deemed waived in a subsequent collection action if the debtor fails to take action in the present case. While Local Rule 2016-1 allows debtor's counsel to seek compensation from the debtor of $200 per objection, given the frequency with which these stale and deficient claims are often filed in a debtor's case, this could result in greatly increased administrative costs to the debtor. It is unfair and inequitable for the debtor to bear the cost of review and objection to these claims when a reasonable pre-filing review by the creditor would disclose these glaring deficiencies.

### *In re Wingerter* (Bkrptcy. N.D.Ohio)

In addition to being time-barred, the claims filed by B-Real and Roundup provide no documentation of a chain of title. Such claims fail to comply with Rule 3001 and have been found in other cases to have no prima facie validity. *See eCast Settlement Corp. v. Tran,* 369 B.R. 312 (S.D.Tex. 2007). In a very thorough analysis of the pre-filing procedures of B-Line, LLC, the parent company of B-Real, LLC in connection with the court's show cause order, the Northern District of Ohio concluded in the *Wingerter* case:

> . . . that, particularly where a debtor has not scheduled any claim resembling the purportedly assigned obligation that a claims purchaser wants to file in the debtors' case, the claim purchaser needs to discharge its obligations under Rule 3001 and Rule 9011 at the time it files a proof of claim. **The assignee should not be able to shift the expense of the initial examination of claims to other interest parties, e.g., chapter 7 trustees and chapter 13 debtors and trustees.** More specifically, the Court finds that when the debtors have not scheduled any claim listing the originating creditor or any direct or indirect assignee of the originating creditor, Rule 9011 requires a claim purchaser, before filing a proof of claim with a bankruptcy court, to obtain originating documents or, when such documents are not available, a clear understanding of the nature of the original dealings that support the assertion of a claim against the particular debtor. Having obtained those documents or that clear

> understanding, the claim purchaser should then attach to the proof of
> claim form the originating documents or an affidavit explaining the
> non-availability of such "media" to the proof of claim form so the
> debtor and other interested parties are given fair notice of the source
> and particulars of the claim.

376 B.R. 221, 224 (Oct. 1, 2007) (emphasis added).

Judge Shea-Stonum found B-Line's conduct to be worthy of sanctions in *Wingerter*, holding as

follows:

> This Court finds that B-Line did not fulfill its Rule 9011 obligations
> in filing the B-Line POC without having possession of the underlying
> transactional documents or any reliable proxy for such documents.
> As a prospective matter, B-Line and other purchasers in the claims
> trading industry should understand that this Court views the filing,
> without review of originating documents, of a proof of claim by an
> assignee/purchaser to fall short of reasonable inquiry under Rule
> 9011.

*Id.* at 239.

While Ms. Andrews is not seeking sanctions against B-Real and Roundup under Rule

9011, the *Wingerter* holding is instructive as it indicates that the court, after thorough review and

analysis of the evidence submitted in connection with its show cause order to B-Line, found that

the practices of a debt buyer in filing claims in bankruptcy are sanctionable. B-Line has appealed

this decision to the Bankruptcy Appellate Panel of the Sixth Circuit.

It is premature to seek sanctions against B-Real and Roundup in the debtor's case.

However, the similarities between theses claims and that in the *Wingerter* case support the

debtor's request for a show cause order to B-Real and Roundup, respectively, to determine if

their policies and procedures are in compliance with the Bankruptcy Rules. Debtor believes that

Roundup is the wholly-owned subsidiary of B-Line. Steven G. Kane, the authorized agent

signing the claims at issue here, is also the "operations manager" whose affidavit B-Line

submitted in connection with the *Wingerter* objection. Speaking to facts on point with the

debtor's objections to the claims of B-Real and Roundup, Judge Shea-Stonum found:

> The Court finds that reasonable inquiry on the part of an assignee of a
> consumer claim before filing a proof of claim requires consideration
> of whether the debtor has included a related claim in its schedules.
> This opinion does not deal with cases in which the debtor has
> admitted an original indebtedness by scheduling the originating
> creditor or one of its assignees in its bankruptcy filings. . . Where, as
> here, the debtor does not include in its schedules a claim that bears
> any resemblance to the purportedly assigned claim, claim assignees
> need to note that red flag. The optimal response to such a red flag
> would be to obtain and review the originating documents prior to
> filing a proof of claim.

*Id* at 231-232.

Similarly, in the debtor's case, Ms. Andrews did not schedule any original creditor or

assignee related to or disclosed on B-Real's claim. As to Roundup's claim, however, the debtor

listed on her schedules a disputed claim to "National Credit Adj./Interntl Fin SE" and further

stated on Schedule F, "[c]reditor/debt unknown to debtor." While Roundup's claim lists

National Credit Adjusters as its assignor, Roundup provides no further documentation and debtor

believes such claim squarely falls under the types of claim signaled out for concern in *Wingerter*

### *Chaussee v. B-Real, et al. (Bkrptcy. W.D.Wa.)*

In a March 26, 2008 unreported memorandum decision (a copy of which is attached

hereto) from the Western District of Washington denying B-Real's motion to dismiss the

debtor's claims brought under the FDCPA and the Washington fair debt collection statute, Judge

Karen A. Overstreet reasoned as follows:

> Plaintiff is not without remedies under bankruptcy law for
> Defendant's filing of improper proofs of claim. Plaintiff had the right
> to, and did, object to the claims. Plaintiff could also file a Rule 9011

> motion against the representative of Defendant who signed the proofs
> of claim. Plaintiff is not attempting to bypass remedies under the
> Bankruptcy Code. Further, although Plaintiff's bankruptcy case is not
> completed and the actions complained of occurred during the
> pendency of the case, the simultaneous assertion of Plaintiff's rights
> under the FDCPA and the Bankruptcy Code will not interfere with
> Plaintiff's bankruptcy proceedings. Because Defendant has no claims
> against Plaintiff, there will be no further proceedings regarding
> allowance of the claims and the claims will not in any way impact
> Plaintiff as the debtor or to other creditors in the bankruptcy case.
> Consequently, the Court finds that Plaintiff has sufficiently stated a
> claim under the FDCPA so as to avoid dismissal under Rule 12(b)(6),
> Fed.R.Civ.P.

*Chaussee v. B-Real, et al (In re Chaussee),* Adv. No. 07-01266, (W.D.Wa.) at pp.13-14.

According to the memorandum, the claims at issue in the *Chaussee* case, to which the

debtor filed an objection after and in addition to her adversary proceeding, were alleged by the

debtor to relate to debts that were not owed by the debtor, not listed on her schedules and,

alternatively, which were barred by the applicable statute of limitations under Washington law.

*Id.* at p. 12. The memorandum states that the proofs of claim listed a debtor as "Dawn Gonzales"

and not in the name of the debtor, but that the proofs of claim contained an account summary

statement which did list the last four digits of the debtor's social security number. *Id.* at p. 12-13.

The memorandum indicates that B-Real has taken the same position as in this case, in that it

apparently argued "that the Plaintiff's exclusive remedy was to object to the claims under Section

502." *Id.* at p. 13. B-Real is appealing the decision to the Bankruptcy Appellate Panel for the

Ninth Circuit.


### *Rogers v. B-Real, L.LC.* (Bkrptcy. M.D.La.)

In a reported decision handed down a few days before the hearing of these objections, the

Middle District of Louisiana denied B-Real's motion to dismiss the debtors' FDCPA claims

arising from B-Real's filing of three time barred proofs of claim on facts nearly identical to the facts of Ms. Andrews' case. *Rogers v. B-Real, L.L.C.*, ___ B.R. ___, 2008 WL 2810593 (July 21, 2008). The signatory to all three claims is Steven G. Kane. The attached "Account Information" page is the same except that the claims in *Rogers* purportedly arise from "services performed" as opposed to "money loaned" in Ms. Andrews' case. The *Rogers* Account Information pages list only an "open date" and not also a "charge off" date as in this case. Also as in the present case, B-Real did not dispute the Rogers' contention that all three claims were barred by the three year statute of limitations provided under Louisiana law.

The Rogers allege in the adversary proceeding that B-Real used false, deceptive, or misleading representation and unfair and unconscionable means to collect a debt in violation of the FDCPA by filing proofs of claim on time barred claims. The court soundly rejected a similar argument to that presented by B-Real and Roundup in this case, that the debtors lack standing to complain because their confirmed plan has not yet paid on the claims at issue. The court, citing *Adair v. Sherman*, 203 F.3d 890, 894 n.3 (7th Cir. 2000) stated "[t]he debtors undeniably have standing to object to B-Real's claims" under 11 U.S.C. § 502(a). *Id* at *3. The debtors' plan in *Rogers*, in contrast to Ms. Andrews' 0% plan, will pay 100% to allowed unsecured claims through installment payments beginning in month 37 and a final balloon payment at month 60.

On the question of whether a debtor can bring a FDCPA claim in response to a creditor's action in a bankruptcy case, the court cited a number of reported decisions that have held that a debtor cannot. *Id* at *7 (citations omitted). However, the court in *Rogers* found that most of the cited decisions holding that the Bankruptcy Code pre-empts the FDCPA pre-date the *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004) decision or "are either factually distinguishable or based on limited reasoning." *Id.* The court found persuasive the thoughtful analysis of *Randolph* in

which the Seventh Circuit decided that "although the Bankruptcy Code and the FDCPA may

overlap, the Bankruptcy Code did not repeal the FDCPA" and that the "'operational differences'

between the two schemes were not irreconcilable" such that neither statute repealed the other. *Id.*

*at \*7 citing Randolph v. IMBS, Inc.*, 368 F.3d 726 at 730.

  The court in *Rogers* refused to find that the debtors had a private right of action against

B-Real for its filing of claims on time-bared debts under 11 U.S.C. § 105. *Id.* at \*4. However,

the court stated that "Bankruptcy Rule 9011 can be used to sanction a creditor that files a proof of

claim without proper prefiling investigation and support, or that otherwise violates Rule 9011."

*Id. citing In re Cassell*, 254 B.R. 687, 691 (B.A.P. 6th Cir. 2000); In re Wingerter, 376 B.R. 221,

224 (Bankr. N.D.Ohio 2007); *In re Dansereau,* 274 B.R. 686, 688-89 (Bankr.W.D.Tex. 2002); *In*

*re Knox*, 237 B.R. 687 at 697; *In re McAllister*, 123 B. R. 393, 395 (Bankr.D.Or.1991); In re

Hamilton, 104 B.R. 525, 527 (Bankr.M.D.Ga.1989). While the court dismissed the Rogers'

claim for damages under § 105, it did not dismiss the Rogers' request for sanctions in the prayer

for relief. *Id.*

### *In re Varona* (Bkrptcy. E.D.Va.)

  B-Real and Roundup cite *In re Varona,* the recent case from the Eastern District of

Virginia, for the proposition that the plain language of 11 U.S.C. § 502(a) allows a creditor to

file a claim that is invalid on its face but believed to be valid unless objected to by a party in

interest. 388 B.R. 705 (May 22, 2008). However, it is important to note that in *Varona*, the

court discussed at length the precedent of *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253

B.R. 653 (Bankr. W.D.N.C. 2000) and determined:

11

> The filing of a false or fraudulent claim in a bankruptcy case would
> unquestionably constitute an abuse of the claims process as well as an
> attempted fraud upon the court. Filing a false or fraudulent claim in a
> bankruptcy proceeding is also undeniably violative of any number of
> specific Bankruptcy Code provisions, warranting the imposition of
> sanctions.

*In re Varona,* 388 B.R. 705, 717.

In *Varona*, the court refused to find that "arguably time-barred claims" were false and

fraudulent and, in arriving at that result, the Court gave significant weight to the fine distinction

that the statute of limitations bars the *collection* of the debt and does not *extinguish* the debt. *Id.*

at 723. The Court found that under Virginia law, "the running of the statutes of limitations

merely bars the creditor's remedy but does not extinguish the debt." *Id.* at 722. While the debtor

acknowledges that North Carolina law likely has a similar distinction between enforcement and

extinguishment, this Court does not have to stretch to such an extreme in order to find a remedy.

As a distinction, however, it appears the creditor in *Varona* did not concede that the claims at

issue were time-barred, as B-Real and Roundup have in this instance.

Without conceding that it is permissible for a creditor to file a claim that is invalid on its

face, as the debtor does not read Rule 3001 to permit such a practice, *Varona* focused exclusively

on the alleged time-barred nature of the claim filed in that case by Portfolio Recovery Associates,

LLC, another prolific debt buyer. It did not raise the question the debtor asks in this case,

whether such claims are entitled to prima facie validity under Rule 3001(f) where the creditors,

as in this case, do not provide documentation of the debt itself or of proof of assignment or

ownership to the debt buyer. In *Varona,* the Court started its analysis from the assumption that

the claim had been properly executed and filed in accordance with Rule 3001 and that "[t]he

claims facially indicate the circumstances under which they were incurred; there is no attempt to

12

obfuscate the time of their incurrence so as to mask the potential bar of time." *Id.* at 723. Even though declining to find the allegedly time-barred claims of Portfolio Recovery false or fraudulent and, therefore, not warranting of sanctions, the court warned Portfolio Recovery that it "should not accept this ruling as a blessing of any of their policies or procedures  or as an advisory opinion condoning the filing of allegedly time-barred claims in any other bankruptcy proceeding. *Id.* at 724, n. 13.

## CONCLUSION

Under the current framework, the only risk the debt buyer runs in filing a stale or deficient claim is disallowance of the claim. They have elected to take a "wait and see" approach to see if a claim is objected to instead of performing an appropriate review of a claim before it is filed. This shifts the expense of pre-filing review to the debtors and trustees who must object to such claims on a case by case basis. In the event no objection is filed and the stale and deficient claims are allowed, then legitimate creditors are harmed and the integrity of the claims administration process suffers. Due to the magnitude of debt buyer claims filings and the prevalence of stale and deficient claims as set forth in this case, the debtor respectfully requests the Court review the practices and procedures of B-Real and Roundup in connection with their filing of such claims in this District.

This the 11th day of August, 2008.

FINANCIAL PROTECTION LAW CENTER


By:     /s/ Maria D. McIntyre
        Maria D. McIntyre
        P.O. Box 390, Wilmington, NC 28402
        Phone:  (910) 442-1013 / Fax:  (910) 442-1011
        *Attorneys for Debtor*

Entered on Docket Mar. 26, 2008

```
 1  KAREN A. OVERSTREET
    Chief Bankruptcy Judge
 2  United States Courthouse
    700 Stewart St., Suite 6310
 3  Seattle, WA  98101
    206-370-5330
 4
 5                  UNITED STATES BANKRUPTCY COURT
                    WESTERN DISTRICT OF WASHINGTON
 6                           AT SEATTLE
 7  In re                    )
                             )    Chapter 13
 8  DAWN CHAUSSEE,           )
                             )
 9                           )
              Debtor.        )
10                           )    Bankruptcy No. 07-11392
                             )
11  _____ )
                             )
12  DAWN CHAUSSEE,           )
                             )    Adversary No. 07-01266
13                           )
                             )
14            Plaintiff.     )
                             )
15  V.                       )    MEMORANDUM DECISION
                             )    ON MOTION TO DISMISS
16  B-REAL, LLC, DOES 1-X,   )
                             )
17                           )
                             )
18            Defendants.    )
    _____ )
19
20       This matter came before the Court on the motion to dismiss

21  under Rule 12(b)(6), Fed.R.Civ.P.,[1] filed by B-Real, LLC

22  ("Defendant"). Defendant contends that the claims of Dawn

23  Chaussee, the debtor in bankruptcy and plaintiff herein

24  ("Plaintiff"), arising under the Washington State Consumer
    _____
25       [1] Absent contrary indication, all "Code," chapter, and section
    references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 as
26  amended by the Bankruptcy Abuse Prevention and Consumer Protection
    Act of 2005 ("BAPCPA"), Pub.L. 109-8, 119 Stat. 23. "Rule"
27  references are to the Federal Rules of Bankruptcy Procedure, and
    "LBR" references are to the Local Bankruptcy Rules of this
28  district.

    MEMORANDUM DECISION - 1
```

1 Protection Act and the Fair Debt Collection Practices Act are
2 barred under the doctrine of federal preemption. For the reasons
3 that follow, this Court will deny Defendant's motion.

## I.   FACTUAL BACKGROUND

5 Plaintiff filed a chapter 13 petition on March 29, 2007. The
6 complaint in this adversary proceeding was filed on September 17,
7 2007. The complaint alleges that Defendant violated the Fair Debt
8 Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and
9 the Washington State Consumer Protection Act, RCW 19.86 *et seq.*
10 ("WACPA"), by filing proofs of claim in the bankruptcy to collect
11 debts that Plaintiff contends she does not owe. The complaint
12 seeks actual damages under the FDCPA, statutory damages of up to
13 $1,000 per violation and reasonable costs and attorneys' fees.
14 Under the WACPA, Plaintiff seeks treble damages and reasonable
15 attorneys' fees and costs.

16 Defendant's answer disputed the applicability of the FDCPA and
17 the WACPA and asserted that Plaintiff's sole remedy was to object
18 to the claims filed by Defendant in the main bankruptcy case.
19 Plaintiff responded on November 16, 2007, by filing objections to
20 the two proofs of claim filed by Defendant in the main case: Claim
21 no. 22 in the amount of $5,269.05 (unsecured, nonpriority) and
22 Claim no. 23 in the amount of $843.74 (unsecured, nonpriority).
23 The objections asserted that the debts were not owed by Plaintiff
24 and therefore not listed on her schedules, or, alternatively, were
25 barred by the statute of limitations for collection of debts under
26 Washington state law. Each of the proofs of claim named the
27 debtor/obligee as "Dawn Gonzales" and provided no documentation
28 other than an account summary referring to the last four digits of

MEMORANDUM DECISION - 2

1 Plaintiff's social security number.  Defendant did not respond to
2 the objections and an order was entered by the Court on
3 December 18, 2007 denying both claims in their entirety.

4      On October 8, 2007, Defendant filed a motion to dismiss
5 Plaintiff's claim under Rule 12(b)(6), Fed.R.Civ.P., made
6 applicable to bankruptcy proceedings under Rule 7012.  Defendant
7 contends in the motion that the provisions of the FDCPA are
8 entirely superceded by the Bankruptcy Code and Rules regarding the
9 claims process, and that Plaintiff's exclusive remedy was to object
10 to the claims under Section 502 (which Plaintiff did, subsequent to
11 the filing of this adversary proceeding).  Defendant further
12 contends that the Bankruptcy Code and Rules supersede the WACPA
13 under the doctrine of federal preemption thereby depriving
14 Plaintiff of the remedies under the state statute.  Defendant has
15 included a request for attorneys' fees and costs under Rule 11,
16 Fed.R.Civ.P., applicable to bankruptcy proceedings under Rule 9011.

17      Plaintiff counters that there is no evidence the debts sought
18 to be collected by Defendant are actually obligations of Plaintiff,
19 and that Defendant's attempt through the bankruptcy claims process
20 to collect debts not owed by Plaintiff violates the FDCPA and the
21 WACPA, which are not preempted by the Bankruptcy Code, but rather
22 coexist with the bankruptcy laws.  Neither party filed a factual
23 declaration in support of their position and it is undisputed that
24 the claims sought to be collected by Defendant are not obligations
25 of Plaintiff.  The Court heard oral argument on March 5, 2008, and
26 took the matter under advisement.

27
28

MEMORANDUM DECISION - 3

1 **II. JURISDICTION**

2 The Court has jurisdiction over this matter pursuant to 28

3 U.S.C. §§ 157 and 1334. This is a core proceeding under 28

4 U.S.C. § 157(b)(2)(B).

5 **III. ISSUE**

6 In a bankruptcy case, can a debtor bring a separate adversary

7 proceeding under the FDCPA and the WACPA against an entity that has

8 filed a claim against the debtor for an obligation that is not owed

9 by the debtor?

10 **IV. DISCUSSION**

11 **A. Burden of Proof.**

12 "On a motion to dismiss for failure to state a claim, the

13 court must construe the complaint in the light most favorable to

14 the plaintiff, taking all her allegations as true and drawing all

15 reasonable inferences from the complaint in her favor." *Doe v.*

16 *United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Under the

17 recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

18 1964-65, 167 L.Ed.2d 929, 75 USLW 4337 (2007), the complaint must

19 proffer "enough facts to state a claim for relief that is plausible

20 on its face." *Id.* at 1986-87.[2]

21

22

23

24 [2] *Bell Atlantic Corp.* disapproved the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d
25 80 (1957). *Conley* had stated "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it
26 appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355
27 U.S. at 45-46. *Bell Atlantic Corp.* decided that "this famous observation has earned its retirement. The phrase is best
28 forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp.*, 127 S.Ct. at 1969.

MEMORANDUM DECISION - 4

**B.   The Washington State Consumer Protection Act Claim.**

Defendant argues that Plaintiff has no remedy under the WACPA based upon its filing of proofs of claim in Plaintiff's bankruptcy because the Bankruptcy Code preempts any state law claim under the WACPA. In *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559 (6th Cir. 1998), the Sixth Circuit Court of Appeals outlined the three different types of preemption of state law by federal law under the Supremacy Clause, U.S. Const. art. VI: (1) express preemption, which occurs when Congress expresses an intent to preempt state law in the language of the statute; (2) field preemption, where Congress intends fully to occupy a field of regulation; and (3) conflict preemption, "where it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 562-63.

Without a doubt, there are strong factors that support the exclusive nature of federal bankruptcy proceedings.   The Constitution grants Congress the authority to establish "uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8. Congress has created comprehensive regulations applicable in bankruptcy proceedings and vested exclusive jurisdiction over those proceedings in the federal district courts.   28 U.S.C. § 1334(a). The Ninth Circuit Court of Appeals has stated, in language often quoted by courts analyzing whether a state cause of action is preempted by the Bankruptcy Code:

> [A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*., demonstrates Congress's intent to create a whole system under federal control which is

MEMORANDUM DECISION - 5

1

2

3

4

5

6

7

8

9

> designed to *bring together and adjust all of
> the rights and duties of creditors and
> embarrassed debtors alike*. [Footnote omitted.]
> While it is true that bankruptcy law makes
> reference to state law at many points, the
> adjustment of rights and duties within the
> bankruptcy process itself is uniquely and
> exclusively federal. It is very unlikely that
> Congress intended to permit the superimposition
> of state remedies on the many activities that
> might be undertaken in the management of the
> bankruptcy process.  (Emphasis added).

*MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th
Cir. 1996).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     Defendant places great reliance on *MSR Exploration*.  In that
case, a chapter 11 debtor brought an action against a creditor
based upon the debtor's assertion that the creditor maliciously
pursued claims against the debtor in the bankruptcy proceedings.
The court held that the debtor's state malicious prosecution
action, which was based upon events taking place *in the bankruptcy*,
was completely preempted by federal bankruptcy law and that the
remedies available to the debtor were exclusively under bankruptcy
law, such as Rule 9011.  The court in *MSR Exploration* noted that
creditors may have less time to "ruminate" on the merits of the
claim before filing it yet risk forfeiting their rights altogether
if the claim is not filed on time.  "The threat of later state
litigation may well interfere with the filings of claims by
creditors and with other necessary actions that they, and others,
must or might take within the confines of the bankruptcy process."
*Id.* at 916.

26

27

28

     The concern of the court in *MSR Exploration* was that the
regulation of the rights between debtors and creditors in
bankruptcy not be disrupted by "even slight incursions and

MEMORANDUM DECISION - 6

1 disruptions brought about by state malicious prosecution actions."
2 That concern is legitimate as it pertains to the relation of
3 creditors and debtors. In the *MSR Exploration* case, the debtor and
4 creditor were parties to a prebankruptcy contract under which
5 disputes arose and were resolved by the bankruptcy court on a
6 claims objection by the debtor. In this case, however, there is no
7 evidence that Plaintiff and Defendant are debtor and creditor,
8 respectively, nor evidence that they have ever been in a debtor-
9 creditor relationship.[3] Defendant therefore has no right to invoke
10 the regulations of the bankruptcy court to adjust the debts
11 alleged, because Defendant has asserted them against the wrong
12 debtor.

13     Applying the three types of preemption summarized in *Bibbo*,
14 *supra*, it is hard to see how Plaintiff's WACPA claim under the
15 unique facts of this case runs afoul of the bankruptcy laws. There
16 is no expression by Congress in the Bankruptcy Code of an intent to
17 preempt state law consumer protection statutes. While it can be
18 argued that the Bankruptcy Code fully occupies the field of debtor-
19 creditor relationships in the context of bankruptcy and insolvency,
20 the bankruptcy laws do not generally apply to third parties who
21 have no relationship to the debtor or the debtor's assets.
22 Finally, the Court finds no evidence that Plaintiff's pursuit of a
23 WACPA claim against Defendant presents an obstacle to the
24 administration and objectives of Plaintiff's underlying bankruptcy
25 proceeding. In the absence of her bankruptcy proceeding, Plaintiff

26

27        [3] Because Defendant does not hold a "claim" against
Plaintiff, Defendant is not a "creditor" entitled to participate in
28 the claims adjustment process under 11 U.S.C. §§ 501, 502. *See* 11
U.S.C. §§ 101(5), (10).

MEMORANDUM DECISION - 7

1  would have a right to assert a claim under the WACPA against
2  Defendant to redress Defendant's attempts to collect a debt she
3  does not owe.  Under the unique facts of this case, the Court does
4  not see why Plaintiff should be deprived of that right merely
5  because she is in a bankruptcy proceeding.

6      Neither party has cited a case involving federal preemption of
7  state law in the bankruptcy context where the parties involved had
8  no debtor-creditor relationship.  *See, e.g., Holloway v. Household
9  Auto. Fin.* Corp., 227 B.R. 501 (N.D. Ill. 1998)(claim under
10 Illinois Consumer Fraud and Deceptive Practices Act preempted where
11 creditor allegedly misvalued its collateral for a claim against
12 debtor); *Koffman v. Osteoimplant Technology, Inc.*, 182 B.R. 115 (D.
13 Md. 1995)(attempted malicious prosecution claim for the filing of
14 an involuntary petition and violation of the stay by creditor
15 preempted); *In re Shape, Inc.*, 135 B.R. 707 (Bankr. D. Me.
16 1992)(claim under Massachusetts Consumer Protection Act preempted
17 where debtor alleged willful violation of stay by creditor with
18 whom debtor had prepetition contractual relationship); *see also In
19 re Bassett*, 255 B.R. 747 (9th Cir. BAP 2000), *aff'd in part, rev'd
20 in part*, 285 F.3d 882 (9th Cir. 2002)(court affirms dismissal of
21 debtor's state law claims against creditor related to reaffirmation
22 agreement).  Even where a debtor-creditor relationship does exist,
23 at least one court has held that the debtor may pursue a state
24 unfair trade practices act claim if there is little risk that
25 allowing the claim to go forward will "disrupt the uniform
26 application of the federal bankruptcy laws or contravene
27 congressional purpose."  *Dougherty v. Wells Fargo Home Loans, Inc.*,
28 425 F.Supp.2d 599, 609 (E.D. Pa. 2006)(claim based upon post-

MEMORANDUM DECISION - 8

1  petition, post-confirmation assessment of attorneys' fees by
2  mortgagee).

3       Because the debtor-creditor relationship does not exist
4  between Plaintiff and Defendant, the Court finds that *MSR*
5  *Exploration* does not apply to preempt Plaintiff's claim under the
6  WACPA.  Whether a violation of that statute occurred in this case
7  must await further proceedings.

8  **C.   The Fair Debt Collection Practices Act Claim.**

9       The stated purpose of the FDCPA is to "eliminate abusive debt
10  collection practices by debt collectors."  15 U.S.C. § 1692(e).
11  For purposes of the motion at issue, the parties do not dispute
12  that Defendant is a debt collector[4] and that the debts asserted are
13  consumer debts.[5]  Plaintiff contends that Defendant's attempt to
14  collect debts that are not owed by her, by filing claims against
15  her in bankruptcy, violates 15 U.S.C. § 1692f.  Section 1692f
16  prohibits a debt collector from using "unfair or unconscionable
17  means to collect or attempt to collect any debt."  The statute
18  contains a nonexclusive list of actions that violate the section,
19  of which the most apropos to this action is subsection (1), which
20  prohibits the collection of "any amount...unless such amount is
21  expressly authorized by the agreement creating the debt or
22  permitted by law."  The undisputed fact in this case is that

23  _____

24       [4]  A debt collector is defined as "any person who uses any
    instrumentality of interstate commerce or the mails in any business
25  the principal purpose of which is the collection of any debts, or
    who regularly collects or attempts to collect, directly or
26  indirectly, debts owed or due or asserted to be owed or due
    another."  15 U.S.C. § 1692a(6).

27       [5]  The FDCPA defines a debt as "any obligation or alleged
    obligation of a consumer to pay money arising out of a
28  transaction...."  15 U.S.C. § 1692a(5).

MEMORANDUM DECISION - 9

1  neither of the debts reflected in the proofs of claim filed by
2  Defendant are debts of Plaintiff, not because those debts are
3  subject to some defense, such as the statute of limitations[6], but
4  because Defendant has simply named the wrong debtor.  The debts
5  alleged are not and have never been debts of Plaintiff.

6       Defendant relies on *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d
7  502 (9th Cir. 2002), which held that the debtor's action under the
8  FDCPA against a creditor for its attempts to collect a discharged
9  debt in violation of Section 524(a)(the discharge injunction) was
10 subject to dismissal because it "would circumvent the Bankruptcy
11 Code's remedial scheme." *Id.* at 504.  The court in *Walls*, however,
12 did not consider the doctrine of preemption in resolving the case,
13 because as correctly pointed out by the Seventh Circuit Court of
14 Appeals in a case with nearly identical facts, one federal statute
15 does not preempt another.  *See Randolph v. IMBS, Inc.*, 368 F.3d
16 726, 729 (7th Cir. 2004), *citing Baker v. IBP, Inc.*, 357 F.3d 685,
17 688 (7th Cir. 2004).  Instead, when two federal statutes address
18 the same subject in a different way, the court must determine
19 whether one statute implicitly repeals the other.  *Id.* at 730;
20 *Branch v. Smith*, 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407
21 (2003).

22      In *Walls*, the Ninth Circuit Court of Appeals correctly
23 concluded that because the discharge injunction of Section 524(a)
24 is a creation of the Bankruptcy Code specifically enacted to

25

26      [6]  Plaintiff has argued in the alternative, based upon the age
27 of the debts as stated by Defendant in the proofs of claim, that
   the debts are barred by the statute of limitations.  That defense,
28 however, is not necessary given that the evidence demonstrates that
   neither debt was ever a debt of Plaintiff.

1 protect discharged debtors from post-discharge collection efforts
2 by creditors whose claims have been discharged, the bankruptcy
3 court and the Bankruptcy Code should dictate the remedy for a
4 violation of that statutory injunction.  The court repeated the
5 district court's conclusion that a determination of the debtor's
6 FDCPA claim "necessarily entails bankruptcy-laden determinations"
7 such as whether the debtor's payments were voluntary under Section
8 524(f), whether she was required to enter into a reaffirmation
9 agreement under Section 524(c), etc.  The court also noted that the
10 Bankruptcy Code provides a civil contempt remedy under Section 105
11 for violation of the discharge injunction and that the existence of
12 this remedy justified dismissal of the debtor's simultaneous claim
13 under the FDCPA.

14      There is considerable disagreement among courts as to whether
15 the Bankruptcy Code and the FDCPA can peaceably coexist without one
16 treading unfairly on the other's objectives.  The Ninth Circuit
17 Court of Appeals in *Walls* held that the FDCPA should give way to
18 the Bankruptcy Code remedies in the context of a violation of the
19 discharge injunction.  The Seventh Circuit Court of Appeals in
20 *Randolph* held just the opposite.  In *Randolph*, the court took up
21 three consolidated lower court cases, each holding that the
22 Bankruptcy Code provides the sole remedy against post-bankruptcy
23 debt-collection efforts.  Disagreeing with *Walls*, however, the
24 Seventh Circuit reversed the three lower court cases, concluding
25 that there was no irreconcilable conflict between the FDCPA and the
26 Bankruptcy Code and that "[I]t is easy to enforce both statutes,
27 and any debt collector can comply with both simultaneously."  368

28

MEMORANDUM DECISION - 11

1 F.3d at 730. There are plenty of cases adopting the *Walls'*
2 reasoning and plenty of cases alined with *Randolph*.[8]

3      Where the facts of the case indicate that the debtor's pursuit
4 of an FDCPA claim will not interfere with the administration of the
5 bankruptcy case, courts have been more willing to permit the claims
6 to go forward, rejecting the creditor's preemption argument. *See,*
7 *e.g., Doughterty v. Wells Fargo Home Loans, Inc., supra* (claim
8 based upon post-petition, post-confirmation acts); *Wagner v. Ocwen*
9 *Fed. Bank, supra* n. 8 (collection action complained of occurred
10 after the bankruptcy proceedings were closed); *Peeples v. Blatt*,
11 *supra* n. 8 (collection action complained of occurred after
12 bankruptcy proceedings); *Molloy v. Primus Automotive Financial*
13 *Services*, 247 B.R. 804, 821 (Bankr. C.D. Cal. 2000)(addressing
14 creditor's "alleged debt collection activities outside of and in
15 disregard of the bankruptcy proceeding.").

16      After *Walls*, confusion regarding the preemption doctrine
17 continues in the Ninth Circuit. In the case of *Wan v. Discover*
18 *Financial Services, Inc.*, 324 B.R. 124 (N.D. Cal. 2005), the court,
19 following *Walls*, affirmed the bankruptcy court's dismissal of
20 counterclaims brought by the debtor in the creditor's nondischarge
21 action for alleged violations of the notice provisions of the

22

---

23      [7] *See, e.g., Baldwin v. McCalla,* 1999 WL 284788 (N.D. Ill.
      1999); *Kibler v. WFS Fin. Inc.*, 2000 WL 1470655 (C.D. Cal. 2000);
24      *Degrosiellier v. Solomon & Solomon, P.C.*, 2001 WL 1217181 (N.D.
      N.Y. 2001); *Gray-Mapp v. Sherman*, 100 F.Supp.2d 810 (N.D. Ill.
25      1999).

26      [8] *See, e.g., Peeples v. Blatt*, 2001 WL 921731 (N.D. Ill.
      2001); *Molloy v. Primus Auto Fin. Serv.*, 247 B.R. 804 (C.D. Cal.
27      2000); *Wagner v. Ocwen Fed. Bank, FSB*, 2000 WL 1382222 (N.D. Ill.
      2000); *Forsberg v. Fid. Nat'l. Credit Serv., Ltd.*, 2004 WL 3510771,
28      2004 U.S. Dist LEXIS 7622 (S.D. Cal. 2004).

1 FDCPA. Distinguishing *Walls*, the court in *Forsberg v. Fidelity*
2 *Nat'l Credit Serv., Ltd.*, 2004 WL 3510771, 2004 U.S. Dist. LEXIS
3 7622 (S.D. Cal. 2004), refused to dismiss a debtor's claim that the
4 creditor's notices violated the provisions of the FDCPA. The court
5 in *Forsberg* pointed out that the creditor in that case was not
6 specifically enjoined by the bankruptcy court from collecting the
7 debt and the debtor was pursuing simultaneously his remedies under
8 the Bankruptcy Code and the FDCPA. *See also In re Lasky*, 364 B.R.
9 385, 388 (Bankr. C.D. Cal. 2007)(court notes "serious question
10 whether the standards of the FDCPA can be imported into the claims
11 objection process.").[9]

12     Plaintiff is not without remedies under bankruptcy law for
13 Defendant's filing of improper proofs of claim. Plaintiff had the
14 right to, and did, object to the claims. Plaintiff could also file
15 a Rule 9011 motion against the representative of Defendant who
16 signed the proofs of claim. Plaintiff is not attempting to bypass
17 remedies under the Bankruptcy Code. Further, although Plaintiff's
18 bankruptcy case is not completed and the actions complained of
19 occurred during the pendency of the case, the simultaneous
20 assertion of Plaintiff's rights under the FDCPA and the Bankruptcy
21 Code will not interfere with Plaintiff's bankruptcy proceedings.
22 Because Defendant has no claims against Plaintiff, there will be no

---

24 [9] Courts are equally divided when looking at whether other
federal statutes governing debtor-creditor relations are preempted
25 by the Bankruptcy Code. *See, e.g., In re Figard*, 2008 WL 501356
(Bankr. W.D. Pa. 2008)(court finds that Bankruptcy Code does not
26 preempt provisions of Real Estate Settlement Procedures Act, 12
U.S.C. § 2605(e)(2)); *In re Holland*, 374 B.R. 409 (Bankr. D. Mass.
27 2007)(Bankruptcy Code does not preempt Real Estate Settlement
Procedures Act); *In re Nosek*, 354 B.R. 331 (D. Mass. 2006)(court
28 finds Bankruptcy Code preempts Real Estate Settlement Procedures
Act and state statutory and common law).

MEMORANDUM DECISION - 13

 1 further proceedings regarding allowance of the claims and the
 2 claims will not in any way impact Plaintiff as the debtor or other
 3 creditors in the bankruptcy case.  Consequently, the Court finds
 4 that Plaintiff has sufficiently stated a claim under the FDCPA so
 5 as to avoid dismissal under Rule 12(b)(6), Fed.R.Civ.P.

 6 **D.   Other.**

 7       Defendant included a request for fees under Rule 9011 with its
 8 motion to dismiss.  Because the Court will deny the motion to
 9 dismiss, Defendant is not entitled to fees.  In addition, the
10 request for fees is not in compliance with Rule 9011(c)(1)(A),
11 which requires a request for fees to be initiated by a separate
12 motion.

13      Defendant's memorandum in support of its motion raises a legal
14 argument about the statute of limitations applicable to the claims
15 it asserted against Plaintiff.  That argument is moot given the
16 concession by Defendant that it has no claims against Plaintiff.

17      Finally, the Court declines to rule on Defendant's contention
18 solely in oral argument that the filing of a proof of claim is not
19 an action to collect a debt under the FDCPA because that claim was
20 not raised in the motion to dismiss or Defendant's memorandum in
21 support of that motion.  Whether Defendant's filing of the proofs
22 of claim at issue in this case violates the FDCPA must await
23 further proceedings.

24                           **CONCLUSION**

25      For the foregoing reasons, the Court finds that Plaintiff's
26 claims under the WACPA and the FDCPA are not subject to dismissal
27 under Rule 12(b)(6), Fed.R.Civ.P.  The Court will therefore enter
28

MEMORANDUM DECISION - 14

1 | an order, on presentation by Plaintiff, denying Defendant's motion

2 | to dismiss.

3 |     DATED this 25th day of March, 2008.

4

5

*Karen A. Overstreet*

KAREN A. OVERSTREET

6 | UNITED STATES BANKRUPTCY JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM DECISION - 15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that she is over eighteen (18) years of age, and that the foregoing

### BRIEF IN SUPPORT OF DEBTOR'S OBJECTIONS TO CLAIMS
### OF
### B-REAL, LLC (CLAIM NO. 5) AND ROUNDUP FUNDING, LLC (CLAIM NO. 7)

in the above captioned case was this day served upon the below named persons by mailing, postage prepaid, first class mail, of a copy of such instrument to such persons, parties and/or counsel at the address shown below:

Mr. Robert R. Browning
Chapter 13 Trustee
Post Office Box 8249
Greenville, NC  27835

Mr. Richard D. Sparkman
Post Office Box 1687
Angier, NC 27501
*Attorney for B-Real, LLC & Roundup Funding, LLC*

Mr. John C. Bircher, III
White & Allen, P.A.
Post Office Box 1555
New Bern, NC 28563
*Attorney for B-Real, LLC & Roundup Funding, LLC*

Mr. Aaron J. Nash
Hale, Dewey & Knight, PLLC
88 Union Avenue, Suite 700
Memphis, TN 38103

This the 11th day of August, 2008.

FINANCIAL PROTECTION LAW CENTER

By:     /s/ Maria D. McIntyre _____
        Maria D. McIntyre
        P.O. Box 390, Wilmington, NC 28402
        Phone:  (910) 442-1013
        *Attorneys for Debtor*