

**SO ORDERED.**

**SIGNED this 30 day of September, 2008.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **ROBIN GRAHAM ANDREWS** | **08-00151-8-JRL** |
| **DEBTOR** | |

**ORDER REGARDING OBJECTIONS TO CLAIMS**

The matters before the court are the objections filed by the chapter 13 debtor, Robin Graham Andrews, to the claims of two unsecured creditors, B-Real, LLC (B-Real) and Roundup Funding, LLC (Roundup). The debtor maintains that both claims are barred by the statute of limitations. In addition, she contends that the writings upon which the claims were based, or statements explaining the circumstances of the loss or destruction of those writings, were not filed with the proofs of claim, and, therefore, the proofs of claim filed by B-Real and Roundup do not comply with Rule 3001(c) of the Federal Rules of Bankruptcy Procedure. B-Real and Roundup filed responses, but at the hearing held on July 24, 2008, in Wilmington, North Carolina, they announced that their claims had been withdrawn.

Notwithstanding the withdrawals, the debtor requests that the court enter show cause orders to examine the collection practices of B-Real and Roundup and to determine if these two creditors should be sanctioned pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. The

debtor also asked that she be awarded attorney's fees for having to file objections to the claims. Both parties filed post-hearing briefs, the last of which was filed on September 2, 2008.

## BACKGROUND

On January 9, 2008, the debtor filed for relief under chapter 13 of the Bankruptcy Code, and proposed a plan that provides for monthly payments of $300 for 24 months and $441 for 36 months, but which pays no dividend to holders of general unsecured claims. On February 29, 2008, B-Real filed a proof of claim (Claim No. 5) in the amount of $3,287.92 for money loaned, stating that it is an assignee of a claim that was previously held by NCO Portfolio Management, Inc. and originally owed to DEBT ONE. B-Real did not attach any documentation establishing that it is the assignee or holder of a claim that the debtor may have owed to DEBT ONE, and did not, as required by Rule 3001(c) of the Federal Rules of Bankruptcy Procedure, attach the writing upon which the claim was based, or a statement explaining the circumstances of the loss or destruction of the writing.

An attachment to the proof of claim, however, did include "account information" in which B-Real states the name of the debtor, the last four digits of the debtor's social security number, the last four digits of the related account number, the name of NCO Portfolio Management, Inc. as "assignor," the name of DEBT ONE as the "original creditor," the "open date" of November 19, 1997, the "charge off date" of June 28, 1999, the "balance as of filing" of $3,287.92, and "money loaned" as the "basis for claim." The proof of claim also includes this statement:

> This claim is based on an unsecured account acquired from Assignor. Pursuant to Instruction 7, above is a redacted version of the information contained in the computer files documenting the account.
>
> This information substantially conforms to 11 U.S.C. § 501, Federal Bankruptcy Rule 3001 and the Instructions to Form B10. See, e.g., In re Moreno, 341 B.R. 813 (Bankr. S.D. Fla. 2006); In re Cluff, 2006 WL 2820005 (Bankr. D. Utah 2006); In re Heath, 331 B.R. 424 (9th Cir. B.A.P. 2005); In re Dove-Nation, 318 B.R. 147 (8th Cir. B.A.P. 2004); In re Guidry, 321 B.R. 712 (Bankr. N.D. Ill. 2005); In re Burkett,

2

329 B.R. 820 (Bankr. S.D. Ohio 2005); In re Lapsansky, 2006 WL 3859243 (Bankr. E.D. Pa. 2006); In re Irons, 343 B.R. 32 (Bankr. N.D. N.Y. 2006).

On March 10, 2008, Roundup filed a proof of claim (Claim No. 7) in the amount of $1,405.11, stating that it is the assignee of a claim it purchased from National Credit Adjusters and that was originally owned by HSBC. Roundup also did not attach any documentation establishing that it is an assignee or holder of a claim that the debtor may have owed to HSBC, and did not, as required by Rule 3001(c) of the Federal Rules of Bankruptcy Procedure, attach the writing upon which the claim was based, or a statement explaining the circumstances of the loss or destruction of the writing. It did, however, include an attachment in the same format as the attachment to the B-Real proof of claim, setting out "account information" in which Roundup states the name of the debtor, the last four digits of the debtor's social security number, the last four digits of the related account number, the name of National Credit Adjusters as "assignor," the name of HSBC as the "original creditor," the "open date" of September 2, 2002, the "charge off date" of April 30, 2003, the "balance as of filing" of $1,405.11, and "money loaned" as the "basis for claim."

## DISCUSSION

Counsel for the debtor begins her brief with a statement that succinctly explains why the issue before the court is so significant. The court agrees with her observation that "[w]ith such imaginative and innocuous names, it is easy to underestimate the negative impact large-scale consumer debt buyers like B-Real, LLC and Roundup Funding are having on the bankruptcy court system." Debtor's Brief at p. 1. The debtor contends that the high volume of inadequately reviewed and stale claims filed by bulk buyers of charged-off debts places an inordinate burden on individual debtors and the bankruptcy system. The debtor argues further that the claims filing practices of bulk

debt buyers undermines the Bankruptcy Code's and the Bankruptcy Rules' goal of promoting the efficient and economical administration of bankruptcy estates.[1]

In this case, of the twelve filed unsecured proofs of claim, five were filed by bulk claims purchasers. Although the plan will not pay a dividend to unsecured creditors, the debtor felt compelled to file objections to four of the five claims because "[i]f the debtor does not raise by objection the affirmative defense of the statute of limitations, that defense may be deemed waived [if the case is dismissed]." Debtor's Brief at p. 6. The four objections were identical and, after the objections were filed, the claims were withdrawn. The debtor maintains that this is a pattern that is becoming all too familiar in this and other districts through the country.

The phenomena of bulk debt purchasing has proliferated and the uncontrolled practice of filing claims with minimal or no review is a new development that presents a challenge for the bankruptcy system. The debtor contends that the remedies available under the Bankruptcy Code and the Bankruptcy Rules are inadequate to address the problem, and proposes as a solution that the court enter a show cause order for the purpose of examining the practices of Roundup and B-Real. It is the debtor's expectation that the court will find the creditors' claim filing procedures to be

---

[1] The debtor contends that the number of debt buying claims is so high that they may, through cumulative effect, undermine the Bankruptcy Rules' important policy goals of efficient and economical administration of the bankruptcy system. In the Eastern District of North Carolina, during the first seven months of 2008 alone, B-Real filed 614 claims and Roundup filed 1,074 claims.

The debtor notes that Mr. Steven G. Kane is the authorized agent signing the claims at issue in this case, and his affidavit was filed in another case in this district earlier this year regarding the assignment of claims in In re Coates, Case No. 03-04673-8-JRL (Bankr. E.D. N.C.). In his affidavit in that case, Mr. Kane stated that B-Line purchased 61,017 chapter 7 bankruptcy receivables from Bank One, Delaware, NA and 77,408 chapter 7 bankruptcy receivables from Chase Manhattan Bank, USA, NA, among which were Ms. Coates' three accounts. B-Line then sold those 138,425 accounts to its wholly-owned subsidiary, Roundup. Those claims are in no way at issue in this case, but are noted here to illustrate the sheer volume of claims that are trading ownership and moving into the bankruptcy system.

4

unacceptable and will impose sanctions that will encourage Roundup, B-Real, and other bulk claims purchasers to change their ways.

The court agrees that the problem needs to be addressed, but disagrees that a show cause order is the best approach. First of all, the damages sustained by a debtor whose plan pays nothing to unsecured creditors are questionable. More importantly, it is not clear that the claim filing practices of Roundup or B-Real are sanctionable under Bankruptcy Rule 9011. Many courts have looked into this emerging issue and found that sanctions were not warranted for filing stale claims or for filing claims without the accompanying documentation required by Rule 3001(c) of the Federal Rules of Bankruptcy Procedure. In addition to the cases mentioned in their proofs of claim, Roundup and B-Real cite numerous decisions to support their procedure of filing stale claims and for filing summaries instead of the statements required by Rule 3001(c). See, e.g., In re Simms, 2007 WL 4468682 (Bankr. N.D. W. Va. 2007); In re Kincaid, 388 B.R. 610 (Bankr. E.D. Pa. 2008); In re Kemmer, 315 B.R. 706 (Bankr. E.D. Tenn. 2004); In re Mazzoni, 318 B.R. 576 (Bankr. D. Kan. 2004); but see In re Wingerter, 376 B.R. 221 (Bankr. N.D. Ohio 2007) (on appeal by B-Line to the Sixth Circuit Bankruptcy Appellate Panel).

Whether this court agrees or disagrees with those cases, there was a substantial body of existing case law upon which Roundup and B-Real reasonably relied, and because of their reasonable reliance, Rule 9011 sanctions are not justified. Accordingly, the debtor's request for a show cause order to examine the claims filing practices of Roundup and B-Real will be denied.

If the Federal Rules of Bankruptcy Procedure do not adequately deal with the problem, the issue should be submitted to the federal rulemaking process. The Judicial Conference of the United States' Advisory Committee on Bankruptcy Rules is well qualified to examine all aspects of the claims filing process and to determine if changes are needed.

The objective of the Federal Rules of Bankruptcy Procedure is "to secure the just, speedy, and inexpensive determination of every case and proceeding," Fed. R. Bankr. P. 1001, and for the most part the claims process has met that goal. Section 101(5) of the Bankruptcy Code broadly defines "claim" to include rights to payment that are contingent, unmatured, and disputed, and § 501(a) provides that any creditor may file a proof of claim. Section 502(a) provides that if a proof of claim is filed, the claim is deemed allowed unless a party in interest objects based on one of the grounds specified in § 502(b). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

Section 502(b)(1) provides that one of the grounds for disallowing a claim is that the claim is unenforceable under applicable law. A statue of limitations, such as North Carolina's three-year statue of limitations, is the type of applicable law referred to in § 502(b)(1) that is grounds for disallowing a claim. See N.C. Gen Stat. § 1-52(1). In many states, including North Carolina, statutes of limitation are affirmative defenses that must be affirmatively pled. See Overton v. Overton, 259 N.C. 31, 129 S.E. 2d 593 (1963). Consequently, a proof of claim based on a stale claim will be deemed allowed under § 501(a) unless the affirmative defense is raised in a filed objection. In re Varona, 388 B.R. 705 (Bankr. E.D. Va. 2008).

Allowing claims based on unchallenged proofs of claim is efficient and economical in most cases. However, requiring debtors to file objections and to raise affirmative defenses to large numbers of stale claims filed by assignees based on a business model rather than after careful review and evaluation is both burdensome and expensive.

A possible solution is to have a rule that requires an assignee that files a proof of claim to disclose whether the claim violates a statute of limitations applicable in the district where the case

6

is pending.  If the claim is outside the statute of limitations and the assignee does not provide a statement explaining why the statute of limitations is not a valid defense, the lack of a statement would constitute prima facie evidence that the defense is valid and the claim would not be allowed. A similar approach would be to require an assignee to state in the proof of claim that no statute of limitations defense is applicable.   A failure to make the disclosure would constitute prima facie evidence that the defense is valid and the claim would be disallowed.

Bankruptcy Rule 3001(a)  requires that a proof of claim must substantially conform to Official Form 10, which provides that limited information must be filed with each proof of claim, including the basis for the claim, the date the debt is incurred, the secured or unsecured status of the claim, and the amount of the claim.  Rule 3001(c) provides that when a claim is based upon a writing, "the original or a duplicate [of that writing] shall be filed with the proof of claim," and further that "[i]f the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Most bulk purchasers of claims, such as Roundup and B-Real, do not file the required writings and do not file statements explaining the writings' loss or destruction.  The consequence of that failure, however, is not the disallowance of the claim, but rather a loss of the prima facie presumption of validity.

"Many courts have weighed in on the ramifications of a creditor's failure to comply with Rule 3001(c) . . . [and the] majority view is that failure to attach documents required by Rule 3001 and Official Form 10 is not, by itself, a basis for disallowance . . . ." 9 Collier on Bankruptcy ¶ 3001.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007).  Moreover, bankruptcy courts in the Fourth Circuit have held that a lack of documentation of the claim is not a basis for disallowance. See, e.g., In re Herron, 381 B.R. 184, 190 (Bankr. D. Md. 2008); In re Simms, 2007 WL 4468682 at *2 (Bankr. N.D. W. Va. 2007).  Rather, the appropriate remedy for failure to

7

properly document a claim or assignment of claim under Rule 3001 is that the claim loses its prima facie presumption of validity and amount.  Simms, 2007 WL 4468682 at *2.  But, loss of the presumption of validity is of little consequence to the debtor, who must still file an objection to the claim to prevent the claim from being deemed allowed under 11 U.S.C. § 502(a).  Perhaps that result cannot be changed without changing the Bankruptcy Code, but it may be possible for the Advisory Committee on Bankruptcy Rules to craft a Rule to relieve the debtor from this burden.

Based on the foregoing, the debtor's request for a show cause order to examine the claims filing practices of Roundup and B-Real and her request for attorney's fees are **DENIED**.  The court will ask the Advisory Committee on Bankruptcy Rules to consider whether changes should be made to the Federal Rules of Bankruptcy Procedure and to the Official Bankruptcy Forms to alleviate the significant burden on individual debtors and on the bankruptcy system caused by the large number of undocumented, stale claims being filed by the bulk purchasers of charged-off debts.  The briefs prepared by counsel for both the debtor and the creditors were thorough and comprehensive, and in light of their usefulness the court will make them available to the Advisory Committee.  Finally, because the federal rule-making process typically takes no less than three years to produce a new rule, this issue will also be referred, with the consent of the two other judges of this district, to the Local Rules Committee of the Eastern District of North Carolina.

**SO ORDERED**.

**END OF DOCUMENT**